THE PEOPLE *ex rel.* Louis C. Huck

*v.*

THE WESTERN SEAMAN'S FRIEND SOCIETY.

1. TAXATION—*against whom assessed.* Where the legal title to property appears in one who, in fact, is but a trustee for another, but the trust is not declared, and there is nothing to indicate it to the revenue officers, it is rightfully assessed in the trustee's name, under the law. If the property is trust property, and subject to taxation, the trustee should, no doubt, list it in the name of the equitable owner.

2. SAME — *exemption — public charity.* The institutions of purely public charity whose property is exempted from taxation must be corporations, and it may be well doubted whether such exemption was designed to embrace more than institutions of public charity such as are founded and maintained by the State, as contradistinguished from those founded by private enterprise.

3. The clause of the second section of the Revenue act of 1872, exempting the property of institutions of public charity, has exclusive reference to institutions or corporations created by the laws of this State, and does not embrace foreign corporations that may locate branches in this State.

4. SAME—*exemptions construed strictly.* Under the constitutional provision requiring all taxes to be imposed equally upon the property of persons and corporations, exemptions from such burdens are to be construed strictly, and not extended, by judicial construction, to embrace other property than is plainly expressed in the law.

APPEAL from the County Court of Cook county; the Hon. MARTIN R. M. WALLACE, Judge, presiding.

Mr. FRANCIS ADAMS, for the appellants.

Mr. J. W. WAUGHOP, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an application, by the collector of Cook county, for judgment for taxes against delinquent lands and town lots, made at the July term of court, 1877. Among others, lots 1 and 2, except south 40 feet of block 66, were reported delinquent for the year 1876. The "Western Seaman's Friend Society" appeared and objected to any judgment against the

property, on the ground it was the owner, and that it was an "institution" of "purely public charity." The objection was sustained, and from the judgment rendered the People prosecute this appeal.

Among property exempt from taxation by the second section of the Revenue act of 1872, in the seventh paragraph, is that of "all property of institutions of purely public charity, when actually and exclusively used for such charitable purposes, not leased or otherwise used with a view to profit." It is under this provision of the statute the objector claims the property against which judgment is sought is exempt from taxation.

It appears the objector is a corporation created by the General Assembly of the State of Ohio, by "An act to incorporate the Western Seaman's Friend Society of Cleveland." Power was granted to the corporation to acquire real and personal property, and sell and convey the same, provided the annual income therefrom shall not exceed $40,000, and among other powers conferred was authority to establish branches of the parent society; and when the determination to become incorporated, with the name of the branch and its officers, shall have been declared, and recorded as provided in the act, such "branch shall be a body corporate." No authority was given to establish branches elsewhere than in the State of Ohio, but if there had been, such grant of power would have been inoperative beyond the territorial effect of the law creating the corporation. The society did, however, establish a branch in Chicago, on the property against which the taxes contested were assessed, and has erected thereon extensive buildings for its use.

The object of the society, as declared in the act incorporating it, is, "for the disseminating moral and religious instruction, and other charities, among sailors and laborers doing business on our Western waters." The society's buildings are in charge of a superintendent appointed by the management of the home office, and is used chiefly as a boarding and lodging house for "sailors, stevedores, dock-men, and that class

of men," but other persons are accommodated with both lodging and board. All that are able are required to pay something for what they get, and under that arrangement some persons entertained pay as high as $4.50 per week, and others pay but trifling sums, according to their ability, while still others are maintained gratuitously. The charges, when any are made, are graduated according to the accommodations furnished. All the income derived from boarders, lodgers or transient persons, is appropriated to maintaining the institution. No part of it is divided as private gain to the officers. Religious services are held in the building, but no part of it seems to be used exclusively for that purpose. The society bought the property and paid for it, but, for convenience, it was conveyed, by deed absolute in its terms, to Benjamin Frankland, who testifies he claims no personal interest in the property, but holds it in trust for the corporation, of which he is one of the directors, and superintendent of the Chicago house.

Our statute provides, all real property in this State, subject to taxation, shall be "listed to the owner thereof." As we have seen, the legal title to the property assessed was in a private individual. No trust had then been declared, and, so far as appeared of record, or the officers making the assessment could know, a private citizen was the owner, in the sense that term is used in the revenue law. That being so, the property was rightfully assessed in that way, under the revenue law, notwithstanding the equitable title may have been in another person or corporation. If it was trust property, it was, no doubt, the duty of the trustee to list the property, if subject to taxation, in the name of the party for whose benefit it was held; but that he did not do. Conceding the property was subject to taxation, it is immaterial whether it was listed in the name of the apparent owner, or by the trustee in the name of the equitable owner.

Property exempt from taxation under that clause of the revenue law cited, is property of "institutions of purely pub-

lic charity." Such *institutions* must be corporations, or else they would not be capable of taking and holding property, either real or personal. What institutions had the General Assembly in view, in providing for exemption from taxation as to their property? Primarily, the legislature must have meant such institutions of public charity as have been or may be established by the laws of this State—such as asylums for the care of the insane, deaf and dumb, and blind, and other institutions exclusively for the relief of that unfortunate class of persons who are maintained by the public charity of the State. Under our constitution, that requires that all taxes shall be imposed equally upon the property of persons and corporations, exemptions from such burdens are to be construed strictly, and are not enlarged or made to embrace other subjects, by judicial construction, than those plainly expressed in the act. It may be well doubted whether that clause of the statute was intended by the legislature to embrace more than institutions of public charity, such as have been founded and are maintained solely by the State, as contradistinguished from institutions founded by private enterprise for the dispensation of private charities. Belonging to the latter class is the institution now seeking exemption from taxation on its property. It was founded by private enterprise, is maintained chiefly by donations from benevolent persons, and is an almoner of purely private charity.

But if a broader construction could be given to the statute, and it could be held to embrace all institutions that dispense charity, whether public or private, and the property used exclusively for that purpose, there is still a valid reason why the property in this case is not exempt from its just proportion of taxation. The statute must, in any event, be understood to have exclusive reference to institutions or corporations created by the laws of this State, and not to foreign corporations that may choose to locate branches in this State. It is only by that comity that exists between States that foreign corporations are permitted to transact in this State the business

for which they were created.   The General Assembly has manifested no intention to relieve the property situated in this State, belonging to such corporations, no matter what their objects may be, whether charitable or otherwise, from the burdens of taxation, even if it possesses the power under the constitution to do so.

In any view that can be taken, the property assessed is liable to taxation under the revenue laws of the State, and the judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE DICKEY dissenting.