[No. 28398. Department One. August 28, 1941.]

THE STATE OF WASHINGTON, on the Relation of King County Water District, Respondent, v. RALPH S. STACY, as Treasurer of King County, Appellant.[1]

[1]Reported in 116 P. (2d) 356.

*B. Gray Warner, Lloyd W. Shorett,* and *James W. Mifflin,* for appellant.

*Weter, Roberts & Shefelman* and *Wayne C. Booth,* for respondent.

STEINERT, J.—Relator is a water district organized under chapter 161, Laws of 1913, p. 533 (since then amended, and now' appearing as Rem. Rev. Stat., § 11579 [P. C. § 7249-11] *et seq.*). Pursuant to the provisions of the statute, the water district authorized certain improvements and, for that purpose, established within its territory a local improvement district. On completion of the improvements, assess-

ments were levied upon the property specially bene-
fited.

Thereafter, certain of the real property located
within the water district and subject to the foregoing
local improvement district assessments was sold at a
general tax foreclosure sale, at which King county
became the purchaser. Since then, there has been no
resale of the property.

The water district, desiring to redeem from such
sale the particular parcel of real estate involved in
this action, tendered to the county treasurer the face
amount of the general taxes against that parcel, to-
gether with costs, but without penalty or interest, and
demanded of the treasurer a deed to the property.
The tender was refused on the alleged ground that the
water district had no right to redeem the property.
The water district thereupon made application to the
superior court for a peremptory writ of mandate to
compel the treasurer to accept the tender and to issue
a deed. A demurrer to the application and supporting
affidavit was overruled, and, the treasurer having
refused to plead further, the court entered a decree
granting the relief prayed for in the application. The
treasurer thereupon appealed.

The sole question involved here is this: Where
property subject to local improvement assessments
levied by a water district has been sold for general
taxes and at the sale the property is bid in by the
county, is the water district entitled, at any time before
resale by the county, to redeem the property upon
payment of the face amount of the general taxes
against it, with costs, but without penalty or interest?

The answer to that question requires consideration
of a series of statutes and of several of our former
decisions.

Chapter 98, Laws of 1911, p. 441 (since then amended,
and now appearing as Rem. Rev. Stat., § 9352 [P. C.

§ 989] *et seq.*), established a uniform method to be employed by cities and towns in making local improvements and in levying and collecting special assessments on property specially benefited by such improvements. Section 40 of that act, p. 467 [Rem. Comp. Stat., § 9393] (now appearing, in amended form, as Rem. Rev. Stat., § 9393 [P. C. § 1028]), provided, in part, as follows:

"In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property, and the surplus, if any, shall be distributed among the proper county funds."

It will be observed that the provision just quoted did not authorize cities and towns to redeem property from sales for general taxes, but merely entitled them to certain proceeds from resales by the county after general tax liens had been discharged.

Chapter 161, Laws of 1913, p. 533 (now appearing, in amended form, as Rem. Rev. Stat., § 11579 *et seq.*), authorized the establishment of water districts for the acquisition, operation, and regulation of water supply systems such as that conducted by respondent herein. Section 9 of that act, p. 540 (now appearing, in amended form, as Rem. Rev. Stat. (Sup.), § 11587 [P. C. § 7249-19], Laws of 1939, chapter 128, p. 362, § 1), originally contained the following provision:

"That the *levying and collection of all public assessments* and issuance of bonds *hereby authorized* shall be in the manner *now and hereafter* provided by law for the *levying and collection of local improvement assessments* and the issuance of local improvement bonds by cities of the *third* class in so far as the same

shall not be inconsitent [sic] with the provisions of this act." (Italics ours.)

At the time of the passage of the 1913 act relative to water districts, there was still no provision authorizing cities and towns to redeem property from sale for general taxes, nor was there any statute conferring that privilege upon water districts. In 1925, however, the legislature enacted chapter 170, Laws of 1925, Ex. Ses., p. 470 (now appearing, in amended form, as Rem. Rev. Stat., § 9393), amending § 40 of the act of 1911 [Rem. Comp. Stat., § 9393], quoted above, and conferring upon cities and towns such right of redemption. The 1925 act provided, in part, as follows:

"That in any case where property subject to local improvement assessments, or taken over by a city or town on foreclosure of local improvement assessments, shall have been struck off to or bid in by any county at a sale for general taxes, the city or town levying such assessments may, at any time before resale by the county, redeem such property from the lien of general taxes upon payment of the face of such taxes with costs without penalty or interest."

In August, 1927, this court held that the water district act of 1913 (chapter 161, Laws of 1913, p. 533), referred to above, was unconstitutional. *Drum v. University Place Water Dist.*, 144 Wash. 585, 258 Pac. 505, approved on rehearing, 147 Wash. 699, 266 Pac. 1056.

In consequence of that decision, the 1929 legislature enacted chapter 114, Laws of 1929, p. 218 (now appearing, in amended form, as Rem. Rev. Stat., § 11579 *et seq.*), which, among other things, attempted to validate the organization and existence of such water districts as had been established under the 1913 act; but, owing to gubernatorial veto of certain sections of the 1929 act, validation of existing water districts

was not attained until 1931, under chapter 71, Laws of 1931, p. 222 (Rem. Rev. Stat., § 11604). However, § 9 of the 1929 act, p. 226, reenacted the corresponding portion of § 9 of the 1913 act as quoted above, with the exception that the method for levying and collecting public assessments by water districts was designated as being the same as that for levying and collecting local improvement assessments by cities of the *first* class, rather than that followed by cities of the *third* class, as had been provided in the original water district act of 1913. That distinction in procedure, however, if of any practical effect, is of no importance here.

The course of legislation thus far reviewed established these two statutory rules: (1) The method adopted for the levying and collection of public assessments by water districts is to be the same as that provided for the levying and collection of local improvement assessments by cities and towns; and (2) where property subject to local improvement assessments by a city or town has been bid in by a county at a sale for general taxes, such city or town is authorized to redeem such property upon the payment of the full amount of such taxes with costs, but without penalty or interest.

Finally, in 1939, the legislature amended chapter 114, Laws of 1929, p. 218, *supra,* by enacting chapter 128, Laws of 1939, p. 362 (Rem. Rev. Stat. (Sup.), § 11587 [P. C. § 7249-19] *et seq.*). Section 1 of the 1939 act, p. 362 (Rem. Rev. Stat. (Sup.), § 11587), provided, *inter alia,*

"That the levying, collection and *enforcement* of all public assessments and issuance of bonds hereby authorized shall be in the manner now and hereafter provided by law for the levying, collection and *enforcement* of local improvement assessments and the issuance of local improvement bonds by cities of the first

class in so far as the same shall not be inconsistent with the provisions of this act." (Italics ours.)

The only difference between the language of the provision just quoted and that of the corresponding provision in § 9 of the 1929 act, referred to above, is that the word "enforcement" was added in the 1939 act.

It is conceded by appellant that, under the provisions of the local improvement assessment act of 1925, *supra,* in a case where property subject to local improvement assessments shall have been struck off to, or bid in by, a county at a sale for general taxes, *the city or town* levying such assessments may, at any time before resale of the property by the county, redeem such property from the lien of general taxes, upon payment of the face amount of such taxes with costs, but without penalty or interest. Appellant contends, however, that the 1925 act, *supra,* conferred that privilege upon cities and towns only, but that water districts did not acquire that right, either by express provision of any statute or by virtue of the acts of 1913, 1929, and 1939, *supra,* whether the three latter acts be considered singly or in conjunction with each other.

The question to be determined here thus narrows itself to this: Do the phrases "levying and collection" and "levying, collection and enforcement" of all public assessments by water districts, as used in the 1913, 1929, and 1939 acts, *supra,* respectively, confer upon such water districts the right to redeem from the lien of general taxes such property as may be subject to the district's own assessments for public improvements, by paying the face amount of the taxes and costs, without penalty or interest?

It is now settled law in this state that, when a county purchases land at a general tax foreclosure sale for want of other purchasers, the county takes and

holds the land not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lies. *Gustaveson v. Dwyer,* 78 Wash. 336, 139 Pac. 194, approved on rehearing, 83 Wash. 303, 145 Pac. 458; *Shelton v. Klickitat County,* 152 Wash. 193, 277 Pac. 839; *Sasse v. King County,* 196 Wash. 242, 82 P. (2d) 536; *Walla Walla v. State,* 197 Wash. 357, 85 P. (2d) 676, 119 A. L. R. 1327; *Longview Co. v. Cowlitz County,* 1 Wn. (2d) 64, 95 P. (2d) 376; *State ex rel. Seattle v. King County,* 4 Wn. (2d) 589, 104 P. (2d) 575.

█ It is equally well settled that a resale of land by the county is but a part of the statutory tax collecting process, which is not complete until such resale is finally made by the county, to the end that the proceeds thereof shall be justly apportioned to the various funds entitled thereto. *Shelton v. Klickitat County, supra; Sasse v. King County, supra; Commercial Waterway Dist. No. 1 v. King County,* 197 Wash. 441, 85 P. (2d) 1067.

█ In the recent case of *Seattle v. King County,* 3 Wn. (2d) 26, 99 P. (2d) 621, we held, upon the authority of *Spokane County v. Spokane,* 169 Wash. 355, 13 P. (2d) 1084, that, when a city or town acquires title to property, either through foreclosure of delinquent local improvement assessments (Rem. Rev. Stat. (Sup.), § 9383 [P. C. § 1019], Laws of 1933, chapter 107, p. 425, § 1), or through redemption from sale at which the county is the purchaser under general tax foreclosure proceedings (Rem. Rev. Stat., § 9393), the municipality holds title to the property so acquired in trust for the benefit of the bondholders and other creditors of the local improvement district. In other words, the city holds title to the land in trust for the purpose of realizing funds on resale of such land in order to pay the obligations for which the land has

been subjected to local improvement assessments. It will be noted that such acquisition of title by the city, through either method, is accomplished during the period when the statutory tax collecting process is still open and as yet unexhausted.

■ It cannot be disputed that, under the authority of the foregoing legislative acts relating to cities and towns, *foreclosure* of assessments by a city or town and subsequent resale of the property to realize funds with which to discharge local improvement obligations, constitute a part of the "collection and enforcement" of the assessments. Appellant concedes that much.

Since *redemption* by a city or town from a general tax foreclosure lien or sale is made for exactly the same purpose and accomplishes the identical result achieved by the city's foreclosure of assessments, the logical conclusion, in our opinion, is that such redemption is, likewise, a part of the "collection and enforcement" of the assessments. The purpose of such redemption by the municipality is not to enrich the city treasury, because, on redemption, the property is held in trust for the local improvement district for which the redemption is made. *Seattle v. King County, supra.* Again, the purpose of the redemption is not simply to get the property back on the tax rolls, for, during the period that it is held by the city, the property is tax exempt. Rem. Rev. Stat. (Sup.), § 9383 [P. C. § 1019]. The only purpose, in fact, is to enforce and collect the assessments against the land.

■ As appears above, the three acts relating to water districts (chapter 161, Laws of 1913, p. 533; chapter 114, Laws of 1929, p. 218; and chapter 128, Laws of 1939, p. 362) specifically declared that the levying and collection of all public assessments shall be in the manner now and hereafter provided by law for the levying and collection of local improvement

assessments by cities. The legislature thus undoubtedly intended to establish a uniform method as between cities and towns on the one hand, and water districts on the other, for the levying and collection of local improvement assessments. That purpose is emphasized by the phrase "in the manner *now and hereafter* provided." (Italics ours.) The language of the three acts is not only comprehensive and all-inclusive, but is also as plain and direct in its reference as it would have been had it used the exact wording employed in the statutes to which it referred.

The intention of the legislature is clear and, furthermore, is founded in good reason. A local improvement district, whether located in a water district or in a city or town, is created for the purpose of making needed improvements, and in either case the method of creating funds therefor is by assessment. There is no reason why the one should not be afforded the same protection as that enjoyed by the other in its right to redeem from a tax sale wherein the county has purchased property which is subject to local improvement assessments.

We therefore have no hesitancy in holding that such right of redemption on the part of the water district is a part of the process of "levying, collection and enforcement" of local improvement assessments by water districts.

The decree is affirmed.

ROBINSON, C. J., MAIN, BLAKE, and DRIVER, JJ., concur.